1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   WINFRED LEE SMITH,                    No.  2:15-cv-1318-TLN-EFB P

12              Petitioner,

13        vs.                              FINDINGS AND RECOMMENDATIONS

14   W. MUNIZ,

15              Respondent.

16

17        Petitioner is a state prisoner proceeding without counsel with a petition for a writ of

18   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a judgment of conviction

19   entered against him on May 18, 2012, in the Sacramento County Superior Court on charges of

20   possession of a firearm by a felon, carrying a concealed weapon, and possession of ammunition

21   by a felon.  He seeks federal habeas relief on the following grounds: (1) his Fourth and

22   Fourteenth Amendment rights were violated because the trial court denied his motion to suppress

23   the gun and ammunition used to convict him, both of which were discovered after he was

24   unlawfully detained and searched; (2) his Fifth and Fourteenth Amendment rights were violated

25   by the trial court's decision to admit evidence of his in-custody statements over his *Miranda*

26   objection; and (3) his Sixth and Fourteenth Amendment rights were violated when the trial court

27   allowed the prosecution to introduce evidence that he possessed a knife and was on

28   methamphetamine on the day of the incident, despite the fact that he was not charged with crimes

related to that conduct. Upon careful consideration of the record and the applicable law, the undersigned recommends that petitioner's application for habeas corpus relief be denied.

**I. Background**

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> A jury convicted defendant Winfred Lee Smith of possession of a firearm by a felon (former Pen. Code, § 12021, subd. (a)(1) [now § 29800, subd. (a)(1) (Stats. 2010, ch. 711, § 6) ] [count 1]; unless stated otherwise, statutory references that follow are to the Penal Code), carrying a concealed weapon (former § 12025, subd. (a)(2) [now § 25400, subd. (a) (Stats. 2010, ch. 711, § 6) ] [count 2], and possession of ammunition by a felon (former § 12316, subd. (b)(1) [now § 30305, subd. (a)(1) (Stats. 2010, ch. 711, § 6) ] [count 3]. In a bifurcated proceeding, the court found true the enhancement allegations that defendant had suffered three strike priors (§§ 667, subds. (b)—(i), 1170.12, subds. (b) & (c)) and served seven separate prison terms. (§667.5.)
>
> Defendant was sentenced as a third striker to 25 years to life on count 1, a concurrent term of 25 years to life on count 3, and seven years for each of the prior prison terms. The court stayed a 25–year–to–life sentence on the count 2 conviction pursuant to section 654.
>
> On appeal, defendant contends the trial court erroneously (1) denied his motion to suppress evidence that he was carrying a gun and ammunition as the fruit of an unlawful detention and search; (2) admitted evidence of defendant's in-custody statements over his Miranda objection; and (3) allowed the prosecution to introduce evidence that he was on methamphetamine and carrying a knife on the day of the incident even though he was not charged with any crimes related to that conduct. We find no error and affirm the judgment.
>
> **Facts And Proceedings**
>
> Around 3:30 p.m. on November 7, 2011, Sacramento County Deputy Sheriff Shaun Hampton was on routine patrol in the area of 37th Avenue and Nina Way, which borders a well-known high crime area where prostitution, narcotics activity, and gang violence are prevalent. After seeing defendant walking down the street away from him, Deputy Hampton parked his patrol car and got out of the car and approached defendant from behind. The officer did not turn his emergency lights on. Defendant turned around to face the officer. At that point, Deputy Hampton saw defendant was carrying a black nylon bag approximately 6

by 12 inches wide with two zippered pouches, a smaller one in the front and a larger compartment in the back.

Deputy Hampton began talking to defendant in a casual manner, asking him how he was doing and where he was going. In response, defendant immediately jumped back and blurted out that he was not on probation or parole. Defendant's hands were fidgety.

After telling him to relax and that it was okay, Deputy Hampton asked defendant for his identification. Defendant handed his wallet to Deputy Hampton and then began to reach inside one of the black bag's zippered pouches. Upon seeing defendant reaching into the bag, Deputy Hampton handed the wallet back to defendant and asked him to remove his identification himself. Defendant tucked the black bag under his arm, found his identification and gave it to Deputy Hampton.

While writing down defendant's information, Deputy Hampton saw defendant acting in a strange manner. Defendant was very fidgety and was speaking rapidly. He was also sweating profusely even though it was a relatively cool afternoon in November. Given defendant's rapid speech pattern, his excessive sweating, and his extremely fidgety behavior, Deputy Hampton believed defendant might be under the influence of a controlled substance.

Defendant began pulling what appeared to be a computer cord out of the bag's larger compartment, which by that time was partially opened. While doing so, defendant was attempting to unzip the large compartment even further. Although Deputy Hampton repeatedly asked defendant to stop touching the black bag, defendant continued pulling on the computer cord until he removed it completely and dropped it on the ground.

Defendant then began to reach inside the bag. Concerned for his safety due to the bag's unknown contents, Deputy Hampton told defendant to stop reaching into the bag. Defendant, however, continued to reach into the bag and repeatedly stated, "I just want to show you what I got." He also kept claiming, "I ain't got nothing." Deputy Hampton asked defendant between five and eight times to stop reaching into the bag.

When defendant continued to reach into the bag, Deputy Hampton began backing up to put some distance between them given their close proximity. Defendant was acting very erratically and then reached into the bag with an open hand. The deputy drew his service weapon and ordered defendant to drop the bag, which he did. Deputy Hampton asked defendant to turn around and place his hands behind his head. Defendant began rapidly looking around in all directions as if to run, but he eventually complied and was handcuffed.

*/////*

3

After handcuffing defendant, Deputy Hampton asked defendant whether he had anything illegal on him. Defendant responded that he had a methamphetamine pipe in his pants pocket. Deputy Hampton retrieved the pipe and placed defendant in the back of the patrol car.

Deputy Hampton checked for law enforcement records relating to defendant. He then picked the black bag up, turned on his in-car camera, and searched the bag. In the bag, Deputy Hampton found a large knife, a loaded semi-automatic .22 caliber handgun, and 30 rounds of .22 caliber ammunition. The in-car camera recorded the conversations between defendant and Deputy Hampton while defendant was handcuffed in the back seat of the patrol car.

Defendant's blood was later drawn at the county jail to determine whether he was under the influence of any narcotics or other controlled substances. Defendant's blood sample tested positive for methamphetamine; the sample amount indicated that defendant had likely used the narcotic within the preceding 24 hours.

Defendant was charged with carrying a concealed weapon and being a felon in possession of both a firearm and ammunition. At the preliminary hearing, defendant moved under section 1538.5 to suppress the gun and ammunition evidence as the fruit of an unlawful detention and search in violation of the Fourth Amendment. The People opposed the motion arguing that neither Deputy Hampton's initial contact with defendant nor his request to see defendant's identification constituted a detention, that Deputy Hampton had reasonable suspicion to detain defendant, and that the search of defendant's bag was incident to his lawful arrest. The trial court judge, sitting as a magistrate, denied the motion, deemed the complaint an information, and held defendant to answer.

Defendant raised the suppression issue again in a motion to dismiss the information under section 995, arguing the magistrate erred in denying his previous motion to suppress because he was unlawfully detained from the moment the officer stopped to talk to him. The People opposed the motion, arguing defendant was not detained until the officer drew his gun, that the detention was lawful, and that the officer had probable cause to arrest defendant for being under the influence of a controlled substance, and later, probable cause to arrest defendant for carrying a concealed weapon and being a felon in possession of the weapon and ammunition. After hearing argument, the trial court denied the motion.

During trial defendant moved to exclude certain pretrial statements he made while sitting in the patrol car which were recorded on Deputy Hampton's in-car camera. According to defendant, the recorded statements were the result of a custodial interrogation without proper *Miranda* warnings. After hearing argument, the court denied the motion.

Defendant also tried to exclude evidence that a knife was found in the black bag and that he had tested positive for methamphetamine on the day of his arrest because he was not charged with any offenses based on such evidence. The court denied the motion to exclude the evidence.

The jury convicted defendant on all counts, and the court later found all enhancement allegations true. Following sentencing, defendant timely appealed.

*People v. Smith*, No. C071695, 2014 WL 6693822, at *1-3 (Cal. Ct. App. Nov. 26, 2014), *reh'g denied* (Dec. 11, 2014), *review denied* (Feb. 11, 2015). Petitioner then filed a petition with the California Supreme Court seeking review of the Court of Appeal's denial of his Fourth Amendment claims. Lodg. Doc. No. 11 (Petition for Review and Order Denying Review). The Supreme Court summarily rejected that petition. *Id*.

**II. Standards of Review Applicable to Habeas Corpus Claims**

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. *See Wilson v. Corcoran*, 562 U.S. 1,5 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, ___ U.S.

___, 132 S.Ct. 38 (2011); *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." *Stanley*, 633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (citing *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. *Id.* Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. [1] *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 412. *See also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'").

---

[1] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)).

6

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. *Johnson v. Williams*, ___ U.S. ___, ___, 133 S.Ct. 1088, 1091 (2013).

/////

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. *Stancle v. Clay*, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. This court "must determine what arguments or theories ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Richter*, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

## III. Petitioner's Claims

### A. Denial of Petitioner's Motion to Suppress

In his first ground for federal habeas relief, petitioner contends that his Fourth and Fourteenth[2] Amendment rights were violated when the trial court denied his motion to suppress.

---

[2] The Fourth Amendment's protections against unreasonable searches and seizures are applicable to state officers through the Fourteenth Amendment. *Ponce v. Craven*, 409 F.2d 621,

ECF No. 1 at 5.[3] On appeal, petitioner argued that he was detained "almost as soon as [the deputy] first made contact with him." ECF No. 1 at 50. He went on to argue that neither his detention nor the deputy's search of the pouch – where the gun, knife, and ammunition were found – was justified by the circumstances. *Id*. at 57-62. The California Court of Appeal disagreed, reasoning:

> Defendant contends the trial court improperly denied his motion to suppress because the gun and ammunition were discovered after he was unlawfully detained and searched in violation of the Fourth Amendment. In defendant's view, he was illegally detained almost from the moment Deputy Hampton contacted him, and certainly when the officer asked him not to touch the zippered bag. We disagree.
>
> **Standard and Scope of Review**
>
> A criminal defendant may challenge the reasonableness of a search or seizure by moving to suppress evidence at a preliminary hearing as defendant did here. (*People v. McDonald* (2006) 137 Cal.App.4th 521, 528 (*McDonald* ); § 1538.5, subd. (f)(1).) If unsuccessful, he may raise the issue again before the superior court by way of a section 995 motion. (*McDonald* at p. 529; § 1538.5, subd. (m).) In a section 995 proceeding, "[t]he superior court merely reviews the evidence; it does not substitute its judgment on the weight of the evidence nor does it resolve factual conflicts." (*McDonald* at p. 529.)
>
> On appeal from the section 995 ruling, we review the magistrate's determination at the preliminary hearing. (*McDonald*, supra, 137 Cal.App.4th at p. 529; *see People v. Laiwa* (1983) 34 Cal.3d 711, 718, superseded by statute on other grounds [on appeal from section 995 review of motion-to-suppress denial "the appellate court in effect disregards the ruling of the superior court and directly reviews" the magistrate's determination holding the defendant to answer].) "We must draw all presumptions in favor of the magistrate's factual determinations, and we must uphold the magistrate's express or implied findings if they are supported by substantial evidence." (*McDonald* at p. 529.) "We judge the legality of the search by 'measur[ing] the facts, as found by the trier, against the constitutional standard of reasonableness.' " (*Ibid*.) We exercise our independent judgment to determine whether, on the facts so found, the search or seizure was reasonable. (*Ibid*.)

624 (9th Cir. 1969).

[3] Page number citations such as this one are to the page numbers reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

"We may sustain the trial court's decision without embracing its reasoning." (McDonald, supra, 137 Cal.App.4th at p. 529.) Thus, we may affirm the ruling on defendant's motion to suppress if it is correct on any theory of the law applicable to the case, even if the ruling is based on an incorrect reason. (Ibid. [citing People v. Smithey (1999) 20 Cal.4th 936, 972].)

**Fourth Amendment Principles**

There are generally three types of police contact with persons, only two of which implicate the Fourth Amendment of the United States Constitution. (*In re Frank V.* (1991) 233 Cal.App.3d 1232, 1237.) That amendment guarantees the freedom from unreasonable searches and seizures. (U.S. Const., 4th Amend.)

The first type of contact "'is referred to as a "consensual encounter" in which there is no restraint on the person's liberty. There need be no objective justification for such an encounter. The second type, called "detention," involves a seizure of the individual for a limited duration and for limited purposes. A constitutionally acceptable detention can occur "if there is an articulable suspicion that a person has committed or is about to commit a crime." The third type involves seizures in the nature of an arrest, which may occur only if the police have probable cause to arrest the person for a crime. [Citations.]' " (In re Frank V., supra, 233 Cal.App.3d at p. 1237.)

"[T]o determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." (*Florida v. Bostick* (1991) 501 U.S. 429, 439 [115 L.Ed.2d 389, 401–402].) Circumstances establishing a seizure might include any of the following: the presence of several officers, an officer's display of a weapon, some physical touching of the person, or the use of language or of a tone of voice indicating that compliance with the officer's request might be compelled. (*United States v. Mendenhall* (1980) 446 U.S. 544, 554 [64 L.Ed.2d 497, 509].)

We must decide where on the spectrum defendant's contact with Deputy Hampton falls, keeping in mind that while police contact may be consensual initially it may later escalate into a detention or an arrest depending on the circumstances. With these concepts in mind, we examine defendant's encounter with police.

**Defendant's Initial Police Encounter was Consensual**

Based on the evidence presented on the motion to suppress, the magistrate found defendant had not been detained within the meaning of the Fourth

Amendment when Deputy Hampton contacted him, asked for his identification, or when the officer asked him not to place his hands in the bag. Instead, the court found a detention occurred when Deputy Hampton pulled his gun, and that the detention was reasonable given defendant's repeated attempts to put his hand in the bag after Deputy Hampton, for safety reasons, asked him not to touch the bag. The court's findings are amply supported by the record and case law. We agree that the totality of the circumstances shows defendant was not detained until Deputy Hampton drew his firearm and pointed it at defendant.

We note at the outset that a police officer may approach an individual in a public place and ask questions without implicating the Fourth Amendment. (*People v. Rivera* (2007) 41 Cal.4th 304, 309.) " The United States Supreme Court has made it clear that a detention does not occur when a police officer merely approaches an individual on the street and asks a few questions. [Citation.] As long as a reasonable person would feel free to disregard the police and go about his or her business, the encounter is consensual and no reasonable suspicion is required on the part of the officer. Only when the officer, by means of physical force or show of authority, in some manner restrains the individual's liberty, does a seizure occur." (*In re Manuel G.* (1997) 16 Cal.4th 805, 821.)

Deputy Hampton, then, needed no justification to approach defendant on a public street and ask him some questions. And the record is devoid of any evidence suggesting Deputy Hampton exhibited coercive or authoritative behavior in approaching defendant. He was alone, did not activate his lights, and pulled up behind defendant without blocking his path. (*In re Frank V.*, supra, 233 Cal.App.3d at pp. 1237–1238 [use of overhead lights or a siren may constitute a gesture of authority]; *People v. Franklin* (1987) 192 Cal.App.3d 935, 940 ["Certainly, an officer's parking behind an ordinary pedestrian reasonably would not be construed as a detention. No attempt is made to block the way"] (*Franklin*).)

Although defendant's statement that he was not on probation or parole suggests he "may have believed he was under official scrutiny, the objective indicia of a detention were absent." (*In re Frank V.*, supra, 233 Cal.App.3d at p. 1238.) We can glean nothing from the record suggesting that the deputy's tone or actions suggested defendant was not free to leave. Deputy Hampton simply asked defendant where he was going. He told defendant to relax and that everything was okay. The deputy himself testified that he struck up a casual conversation with defendant. Given the totality of the circumstances, defendant was not detained upon his initial contact with Deputy Hampton.

Asking to see defendant's identification did not transform the consensual encounter into a detention n. Where a consensual encounter has been found, as in this case, police may ask for identification. (*Franklin*, supra, 192 Cal.App.3d at p. 941.) Likewise, defendant's compliance in handing

11

over his identification does not mean he was detained. (*People v. Leath* (2013) 217 Cal.App.4th 344, 353 ["a voluntary relinquishment of one's identification card does not constitute a seizure as long as the encounter is consensual under the totality of the circumstances"].)

And, unlike defendant argues, Deputy Hampton's repeated requests that defendant refrain from reaching into the bag did not escalate the contact to a detention. (*In re Frank V*., supra, 233 Cal.App.3d at p. 1238 [ordering defendant to remove his hands from his pockets did not transform a consensual encounter into a detention]; *Franklin*, supra, 192 Cal.App.3d at p. 942 [asking defendant to take his hands out of his pockets cannot reasonably be construed as a show of authority sufficient to transform the encounter into a detention].) "We are sensitive to the delicate balance between Fourth Amendment rights and a police officer's safety." (*In re Frank V*. at p. 1238.) Requesting defendant to keep his hands in sight was the least intrusive means of neutralizing a perceived danger to Deputy Hampton's safety. (*Id*. at pp. 1238–1239.) "'What is at most a mere inconvenience cannot prevail when balanced against legitimate concerns for the officer's safety.'" (*Id*. at p. 1238.)

Once Deputy Hampton drew his firearm, however, we believe, like the trial court found, that defendant was detained for purposes of the Fourth Amendment. The act of drawing his weapon conveyed a sufficient degree of authority over defendant to constitute a detention. (*United States v. Mendenhall*, supra, 446 U.S. 544 at p. 554 [64 L.Ed.2d 497, 509] [officer's display of a weapon indicative of a seizure under the Fourth Amendment].)

**Defendant's Conduct Justified his Detention**

Having concluded defendant was detained when Deputy Hampton displayed his weapon, we must decide whether defendant's conduct justified the detention as the trial court so found. We find that it did.

A suspect may be detained if an officer has a reasonable suspicion that criminal activity is afoot and that the suspect is connected with it. (*Terry v. Ohio* (1968) 392 U.S. 1, 30 [20 L.Ed.2d 889, 911] (Terry ).) In determining whether a detention was justified, reviewing courts "'must look at the "totality of the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. [Citation.] This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person." ' " (*People v. Osborne* (2009) 175 Cal.App.4th 1052, 1058 (Osborne ).) Applying this standard, we find Deputy Hampton's detention of defendant was more than reasonable.

A person's conduct of placing his hands back in his pockets, after an officer has instructed him to take them out, has been found to constitute reasonable

grounds to detain. (*In re Frank V.*, supra, 233 Cal.App.3d at p. 1240.) Continually reaching into a bag that is large enough to conceal a weapon, the contents of which are unknown, is analogous. (*People v. Celis* (2004) 33 Cal.4th 667, 680 ["Unquestionably, the work of a police officer in the field is often fraught with danger. At any given moment, a seemingly safe encounter or confrontation with a citizen can suddenly turn into an armed and deadly attack on the officer"].)

Moreover, defendant's fidgety and strange demeanor and his physical appearance were other factors contributing to Deputy Hampton's reasonable suspicion that criminal conduct had occurred, or was about to occur. Deputy Hampton testified that defendant's mannerisms and profuse sweating on a cool November day were indicative of someone under the influence of a controlled substance. His opinion was based on his approximately 11 years as a peace officer during which time he underwent extensive drug training and handled hundreds of drug related arrests. " '[C]ircumstances and conduct which would not excite the suspicion of the man on the street might be highly significant to an officer who had had extensive training and experience.' " (*In re Frank V.*, supra, 233 Cal.App.3d at p. 1240.)

Defendant's presence in a high crime area, and specifically a well-known narcotics area, was likewise an additional factor contributing to a reasonable suspicion justifying the detention. While an area's reputation for criminal activity alone may not justify an investigative detention, it is appropriate to consider with other factors when assessing whether a detention was reasonable under the Fourth Amendment. (*People v. Souza* (1994) 9 Cal.4th 224, 240; *In re Frank V.*, supra, 233 Cal.App.3d at p. 1241.)

Based on the totality of the circumstances, including the location, defendant's demeanor, and defendant's repeated attempts to place his hand in the bag after Deputy Hampton asked him not to, Deputy Hampton had reasonable articulable suspicion to temporarily detain defendant.

**Handcuffing Defendant was not a De Facto Arrest**

Deputy Hampton placed defendant in handcuffs after ordering him to drop the bag and prior to asking him whether he had anything illegal. Handcuffing the defendant did not change the detention into a de facto arrest as defendant impliedly argues.

"[T]he handcuffing of a detained individual does not necessarily convert the detention into a de facto arrest." (*Osborne*, supra, 175 Cal.App.4th at p. 1062.) For example, in *People v. Soun* (1995) 34 Cal.App.4th 1499, 1517–1519, the court deemed police to have conducted a lawful temporary detention and not a de facto arrest where they ordered occupants of a vehicle out of their car at gunpoint, handcuffed them, placed them in a

patrol vehicle, drove them three blocks away, and detained them for 30 minutes.

Under the circumstances, we find nothing unreasonable about the officer's conduct in handcuffing defendant. Defendant was described as a large man, weighing approximately 230 pounds. Deputy Hampton further testified that he feared for his safety. Given defendant's large stature and his agitated behavior, Deputy Hampton's safety concerns were fully justified. The officer, moreover, testified that he observed defendant rapidly looking left to right with his eyes and head. Based on his training, the officer recognized this as indicative of someone intending to flee. (*People v. Stier* (2008) 168 Cal.App.4th 21, 27 [handcuffing during detention generally sanctioned in cases where officer has a reasonable basis for believing the suspect poses a present physical threat or might flee] (*Stier* ).) Briefly placing defendant in handcuffs to safely effectuate the investigatory detention and to deter his flight from the scene was reasonable.

## Questioning During Detention Without Miranda Warnings was Appropriate

Because Deputy Hampton reasonably detained defendant, he was entitled to " 'investigate the circumstances that provoke[d] suspicion.'" (*Berkemer v. McCarty* (1984) 468 U.S. 420, 439 [82 L.Ed.2d 317, 334] (*Berkemer* ).) These circumstances included defendant's location in an area known for narcotics activity, his bizarre demeanor, erratic behavior, rapid speech pattern, profuse sweating, and incessant attempts to place his hand in the bag after the officer asked him to stop.

Deputy Hampton was permitted to ask defendant a "moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." (*Berkemer*, supra, at p. 439 [82 L.Ed.2d at p. 334]; *People v. Manis* (1969) 268 Cal.App.2d 653, 663 (*Manis* ) ["brief questioning of a suspect temporarily detained by the police for investigation is constitutionally valid"].) Before doing so, he was not required to inform defendant of his rights under *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694] (*Miranda* ). (*Manis*, supra, 268 Cal.App.2d at p. 669 ["persons temporarily detained for brief questioning by police officers who lack probable cause to make an arrest or bring an accusation need not be warned about incrimination and their right to counsel, until such time as the point of arrest or accusation has been reached or the questioning has ceased to be brief and casual and become sustained and coercive"].)

Under the circumstances, we perceive nothing inappropriate with Deputy Hampton asking defendant a single question about whether he had anything illegal. (*Stier*, supra, 168 Cal.App.4th at p. 25 [noting that officer asked individual whether she consented to a search and whether she had

14

anything illegal].)  Defendant was not obliged to answer.  (*Berkemer*, supra, 468 U.S. at p. 439 [82 L.Ed.2d at p. 334].)  But once he did, stating he had a methamphetamine smoking pipe in his pocket, the officer had probable cause to believe defendant had committed a drug-related offense. (*See* Health & Saf.Code, §§ 11550, subd. (a) [punishing the use of certain controlled substances, including methamphetamine]; 11364 [unlawful possession of narcotics paraphernalia].)  This is especially so given defendant's rapid speech, profuse sweating and erratic behavior, which, based on his training, Deputy Hampton testified were recognized symptoms of being under the influence of a controlled substance.

"Probable cause to arrest exists if the facts known to the arresting officer would lead a person of ordinary care and prudence to entertain an honest and strong suspicion that an individual is guilty of a crime." (*People v. Kraft* (2000) 23 Cal.4th 978, 1037; § 836 [warrantless arrest justified where officer has probable cause to believe a misdemeanor was committed in his presence].)  In cases involving narcotics, " 'probable cause "should not be understood as placing the ordinary man of ordinary care and prudence and the officer experienced in the detection of narcotics offenders in the same class.  Circumstances and conduct which would not excite the suspicion of the man on the street might be highly significant to an officer who had had extensive training and experience in the devious and cunning devices used by narcotics offenders to conceal their crimes." ' " (*People v. Rich* (1977) 72 Cal.App.3d 115, 121 (*Rich* ) [quoting *People v. Superior Court* (Kiefer) (1970) 3 Cal.3d. 807, 827].)

In *Rich*, the officer had extensive narcotics training and recognized the suspect's swaying, deliberate speech and droopy eyelids as physical symptoms of being under the influence of an opiate. (*Rich*, supra, 72 Cal.App.3d at pp. 118–121.)  This was sufficient to constitute probable cause to arrest the defendant for violating Health and Safety Code section 11550. (*Rich* at pp. 121–122.)  The same is true here.

**Defendant's Bag was Searched Incident to a Lawful Arrest**

Defendant contends that regardless of whether the detention was reasonable, Deputy Hampton was limited under *Terry v. Ohio* to patting down the outside of the bag to determine whether it contained a weapon. (*Terry*, supra, 392 U.S. at p. 24 [20 L.Ed.2d 908].)  Because Deputy Hampton failed to conduct a limited patdown search before opening the bag, defendant argues the challenged evidence should have been suppressed. We disagree, finding the officer searched the bag incident to a lawful arrest. (*McDonald*, supra, 137 Cal.App.4th at p. 528 [denial of motion to suppress affirmed on a ground advanced by the People in their opposition to defendant's section 995 motion but not relied upon by the trial court].)

/////

Following a lawful arrest, an officer may generally conduct a warrantless search of an arrestee's person and the area within his or her immediate control. (*People v. Flores* (1979) 100 Cal.App.3d 221, 229 (*Flores* ) [citing *Chimel v. California* (1969) 395 U.S. 752, 762–763 [23 L.Ed.2d 685, 693–694]].) The "search incident to arrest rule" includes "an arrestee's personal articles[,] such as a purse, wallet or coat actually in use—though not necessarily on his person—at the moment of arrest," because such items serve as possible sources of concealed weapons or other evidentiary items. (*Id.* at pp. 228, 230 [warrantless search of canvas shoulder bag valid as being incident to a lawful arrest]; *People v. Brocks* (1981) 124 Cal.App.3d 959, 963–965 [upholding search of suspect's closed coin purse incident to arrest where officer reasonably believed item contained marijuana].) Because probable cause existed to arrest defendant, Deputy Hampton could lawfully search the black bag defendant had been carrying throughout the encounter even though it was no longer on his person.[4]

Given our conclusion that Deputy Hampton lawfully detained defendant, his statement alerting the officer to the methamphetamine pipe in his pocket during the brief detention was admissible. So, too, was the gun and ammunition evidence, which were discovered incident to his lawful arrest.

---

[4] The court notes that there is some question as to whether the search in this case offends the rule announced by the United States Supreme Court in *Arizona v. Gant*, 556 U.S. 332 (2009). In *Gant*, the Supreme Court held that a search of the defendant's vehicle was unreasonable where "police could not reasonably have believed either that [the defendant] could have accessed his car at the time of the search or that evidence of the offense for which he was arrested might have been found therein." *Id.* at 344. Here, petitioner was placed in the patrol car and the bag was not in the area of his immediate reach at the time the officer searched it.

Nevertheless, as discussed *infra*, "the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial." *Stone v. Powell*, 428 U.S. 465, 481-82 (1976). The relevant question is whether he had a fair opportunity to litigate the issue at the state court level. *Id.* The Ninth Circuit has explained:

> Under *Stone*, exclusionary rule claims were barred if the petitioner had a full and fair opportunity to litigate them below whether or not they were actually adjudicated on the merits and whether or not they involved an unreasonable application of Supreme Court law or unreasonable determination of the facts.
>
> . . .
>
> We are not persuaded that the passage of AEDPA abrogated this doctrine and eliminated other existing limitations on habeas relief sub silencio.

*Newman v. Wengler*, 790 F.3d 876, 878-879 (9th Cir. 2015).

16

The trial court, therefore, did not err in denying defendant's motion to suppress.

*Smith*, 2014 WL 6693822, at *3-8. Petitioner raised this issue in a petition for review filed in the California Supreme Court. ECF No. 1 at 102-113. The Supreme Court summarily denied his petition for review. Lodg. Doc. No. 11 (Petition for Review and Order Denying Review).

### 1. **Applicable Legal Standard**

It is settled law that where "the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976). California law, namely Cal. Penal Code § 1538.5, provides that a defendant may move to suppress evidence on the basis that it was obtained in violation of the Fourth Amendment. *Gordon v. Duran*, 895 F.2d 610, 613 (9th Cir. 1990). *Stone* did not provide a specific test for determining whether the State provided an opportunity for full and fair litigation of a claim, but it did refer to the case of *Townsend v. Sain*, 372 U.S. 293 (1963). *Stone*, 428 U.S. at 494 n. 36. *Townsend* holds that a federal court must grant a habeas petitioner an evidentiary hearing

> If (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

372 U.S. at 313. The Ninth Circuit has held that although *Townsend* "must be given great weight in defining what constitutes full and fair consideration under *Stone*, we do not believe that it must always be applied literally . . . as the sole measure of fullness and fairness." *Mack v. Cupp*, 564 F.2d 898, 901 (9th Cir. 1977). Federal courts may also consider the extent to which the relevant claims were briefed before and considered by state trial and appellate courts. *Terrovona v. Kincheloe*, 912 F.2d 1176, 1178-1179 (9th Cir. 1990).

1          2. **Analysis**

2          The court finds that the State afforded petitioner a full and fair opportunity to litigate his

3   Fourth Amendment claim, first before the trial court and then before the Court of Appeal.  The

4   record indicates that petitioner moved to suppress the relevant evidence under § 1538.5, the

5   prosecution opposed the motion, and the trial court held a hearing to decide the issue.  Lodg. Doc.

6   No. 1 at 16-32, 33-37, 78-79.  After the motion to suppress was denied and the complaint deemed

7   an information, petitioner moved to set aside the information and the prosecution submitted an

8   opposition to that motion as well.  *Id*. at 127-142, 258-271.  The trial court denied petitioner's

9   motion after argument.  *Id*. at 143.  The issue was raised again before the Court of Appeal, where

10  counsel for both the petitioner and the State addressed the issue in their briefing.  Lodg. Doc. No.

11  6 at 11-32; Lodg. Doc. No. 7 at 7-24.  As noted above, the Court of Appeal considered

12  petitioner's Fourth Amendment arguments and rejected them in a reasoned opinion.  *Smith*, 2014

13  WL 6693822, at *3-7.  Accordingly, the court finds that no habeas relief may be granted on

14  petitioner's Fourth Amendment claim.  *See Abell v. Raines*, 640 F.2d 1085, 1088 (9th Cir. 1981)

15  (finding a full and fair opportunity where there was a lengthy evidentiary hearing transcript, a

16  four-page appellate opinion, and substantial briefs addressing an appellant's Fourth Amendment

17  claim).

18       **B.  Admission of Statements Over Miranda Objections**

19          Petitioner argues that the recording of the conversation between himself and Deputy

20  Hampton should not have been presented to the jury because the exchange was not preceded by

21  *Miranda* warnings.  The Court of Appeal rejected this argument:

22          **Admissibility of Defendant's Pretrial Statements**

23          Defendant argues that his statements to Deputy Hampton while seated in
24          the patrol car were inadmissible because they were obtained in violation of
            Miranda. (*Miranda*, supra, 384 U.S. 436 [16 L.Ed.2d 694].)
25
            *Miranda* requires that any person who is suspected or accused of a crime
26          and who has been taken into custody may not be interrogated by the police
            unless he first knowingly and intelligently waives his right to silence, to the
27          presence of an attorney, and to appointed counsel if indigent. (*People v.
            Ray* (1996) 13 Cal.4th 313, 336 (*Ray* ) [citing *Miranda* at pp. 444–445,

28

                                          18

458, 467, 476].) "Statements obtained in violation of Miranda are not admissible to prove the accused's guilt in a criminal prosecution." (*Ibid.*)

*Miranda* warnings are only implicated when a suspect is subjected to a custodial interrogation. (*Ray*, supra, 13 Cal.4th at p. 336; *Rhode Island v. Innis* (1980) 446 U.S. 291, 300–302 [64 L.Ed.2d 297, 307–308] [*Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent].) For purposes of *Miranda*, custodial interrogation involves "a measure of compulsion above and beyond that inherent in custody itself." (*Ray*, supra, at p. 336.) Interrogation includes subjecting a person to "'words or actions ... that the police should know are reasonably likely to elicit an incriminating response.' " (*Ibid.*) "No interrogation occurs where the purpose behind *Miranda* is not implicated—preventing government officials from exploiting the 'coercive nature of confinement to extract confessions that would not [otherwise] be given.' " (*Id.* at pp. 336–337.)

Not all statements from a confined suspect are the product of police interrogation, however. (*Ray*, supra, 13 Cal.4th at p. 337.) "Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence." (*Ibid.*)

When reviewing whether a trial court improperly admitted a defendant's statements over his *Miranda* objection, we are bound to accept the trial court's resolution of disputed facts and inferences if supported by substantial evidence, but we must independently determine whether the challenged statements were illegally obtained. (*People v. Boyer* (1989) 48 Cal.3d 247, 263, disapproved on other grounds in *People v. Stansbury* (1995) 9 Cal.4th 824, 830, fn.1.)

After acknowledging the absence of evidence showing Deputy Hampton read defendant his *Miranda* rights at any time before defendant made the challenged pretrial statements, the court nonetheless concluded defendant's statements were volunteered rather than the product of a custodial interrogation. Thus, despite the lack of any *Miranda* warnings, the court ruled the statements admissible.

On appeal, defendant focuses on two questions by Deputy Hampton in particular as evincing an intent to elicit an incriminating response: (1) "you made a really bad decision, didn't you?" and (2) "[i]s that why you were reaching into the bag?" We conclude defendant's statements, even those responding to the above questions, were not elicited as the result of interrogation. The statements, therefore, did not violate Miranda and were admissible during trial.

First, the record shows defendant and not Deputy Hampton initiated the challenged conversation and directed its course. (*Ray*, supra, 13 Cal.4th at p. 338 [confession valid where suspect initiated contact with police].)

19

Deputy Hampton's question about defendant's reason for reaching into the bag was simply in response to defendant's statement that he was "not challenging" the officer. At one point Deputy Hampton even told defendant, "I got nothing to say to you." Later, the officer told defendant that he could "talk to the jury." The requisite coercive activity by Deputy Hampton is decidedly absent.

Second, defendant's statements were essentially given in a narrative, almost rambling form the purpose of which was to justify, explain, or at least excuse his problematic behavior. That Deputy Hampton interposed some comments and questions to clarify matters does not mean defendant was interrogated while in custody. (*Ray*, supra, 13 Cal.4th at p. 338 [officer not required to sit silently and listen to suspect's rambling narrative; officer can ask neutral inquiries and clarifying questions].)

And, even assuming, for the sake of argument, that the court erred in admitting the statements, we conclude any error was not prejudicial. (*People v. Sims* (1993) 5 Cal.4th 405, 447–448 [admission of confession or statements obtained in violation of *Miranda* requirements subject to harmless beyond reasonable doubt standard in *Chapman v. California* (1967) 386 U.S. 18, 23 [17 L.Ed.2d 705, 710].) In other words, the error, if any occurred, did not contribute to the verdict.

Former section 12021 makes it a crime for a convicted felon to own, purchase, receive, or have "in his or her possession or under his or her custody or control any firearm." (Former § 12021, subd. (a)(1) [now § 29800, subd. (a)(1) (Stats. 2010, ch. 711, § 6) ].) Similarly, former section 12316 prohibits a convicted felon, who cannot own or possess a firearm under section 12021, from owning, possessing, or having under his or her custody or control any ammunition or reloaded ammunition. (Former § 12316, subd. (b) [now § 30305, subd. (a)(1) (Stats. 2010, ch. 711, § 6) ].)

Defendant stipulated that he had been convicted of a felony. And, it was uncontested that Deputy Hampton observed defendant holding and reaching into the bag that contained the loaded gun and ammunition. Given defendant's stipulation and the uncontested evidence that defendant possessed the bag with the gun and the ammunition, we are convinced beyond a reasonable doubt the jury still would have convicted defendant even if the statements had not been admitted.

*Smith*, 2014 WL 6693822, at *8-10. As Respondent points out, there is no evidence that petitioner ever presented this claim to the California Supreme Court and, as such, it is not properly exhausted. *Cooper v. Neven*, 641 F.3d 322, 326 (9th Cir. 2011) ("Exhaustion requires the petitioner to 'fairly present' his claims to the highest court of the state."). Generally, a federal court should dismiss a habeas petition containing any claims for which state remedies have not

been exhausted. *Rose v. Lundy*, 455 U.S. 509, 522 (1982).[5] If a petition is without merit, however, a federal court may deny it even if it includes unexhausted claims. 28 U.S.C. § 2254(b)(2).

### 1. Applicable Legal Standard

The United States Supreme Court has held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). *Miranda* defined 'custodial interrogation' as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id*. Custody exists where a reasonable person would not have felt at liberty to end the discussion and leave. *Howes v. Fields*,    U.S.   , 132 S. Ct. 1181, 1189 (2012). *Miranda* does not, however, apply to spontaneous statements volunteered without interrogation. *See United States v. Gordon*, 974 F.2d 1110, 1116 (9th Cir. 1992). Lastly, even if a federal court determines that certain statements should not have been admitted, it must also find that the error "had substantial and injurious effect or influence in determining the jury's verdict." *Hurd v. Terhune*, 619 F.3d 1080, 1089-1090 (9th Cir. 2010). A petitioner is not entitled to habeas relief if the error was harmless. *Id*. at 1090.

### 2. Analysis

The court finds that the Court of Appeal's conclusions were not contrary to any clearly established federal law. Critically, the record supports the finding that petitioner was not subject to custodial interrogation by the deputy. Instead, he offered the relevant statements unbidden. The transcript indicates that the deputy began by asking petitioner his name and birthdate. Lodg. Doc. No. 1 (Clerk's Transcript Vol. 1) at 286. Then, the deputy asked "You made a really bad

---

[5] Respondent also notes that this requirement cannot be evaded by way of a claim of technical exhaustion insofar as the claim would then be procedurally defaulted. ECF No. 10 at 9. The court need not address the issue of procedural default, however, if the claim is more easily denied on its merits. *Franklin v. Johnson*, 290 F.3d 1223, 1232 (9th Cir. 2002) ("[C]ourts are empowered to, and in some cases should, reach the merits of habeas petitions if they are, on their face and without regard to any facts that could be developed below, clearly not meritorious despite an asserted procedural bar.").

decision, didn't you?" *Id*. To this, petitioner offered a rambling defense referencing items lying beside a field and a street where such items could be found. *Id*.at 286-287. Rather than delving further into petitioner's narrative, the deputy stated "I got nothing to say to you." *Id*. at 287. Undeterred, petitioner argued that he was not challenging the deputy, to which the deputy responded "Is that why you reaching into the bag? Not challenging me?" *Id*. Petitioner again denied that he had challenged the deputy, stated that he had only been attempting to show him the contents of the pouch, and lamented that he had recently been beat up. *Id*. at 287-288. The deputy asked no follow-up questions and stated "[a]ll I want to do is go home to my family." *Id*. at 288. Rather than letting that be the last word, petitioner chose to keep talking in an attempt to justify his actions. *Id*. at 288-292.

The court also finds that these statements, even if they were admitted error, had no substantial and injurious effect in determining the verdict. A firearm and ammunition were found in petitioner's pouch and he stipulated that he had previously been convicted of a felony. Lodg. Doc. No. 4 (Reporter's Transcript Vol. 1) at 53. Petitioner never contested ownership of the bag or its contents. As such, there is no reasonable basis on which to conclude that the trial outcome would have been different if the relevant statements had been withheld.

## C. Admission of Prejudicial Evidence

Petitioner argues that the trial court's decision to admit evidence showing that he was under the influence of methamphetamine and that he possessed a knife on November 7, 2011 was error. ECF No. 1 at 8. He contends that this evidence was inadmissible, irrelevant, and prejudicial and that its admission violated his rights under the Sixth and Fourteenth Amendments. *Id*. at 75-76. The California Court of Appeal rejected this argument:

> Defendant contends it was prejudicial error to admit evidence showing the bag contained a knife and that defendant tested positive for using methamphetamine within the preceding 24 hours of his encounter with Deputy Hampton. He reasons as follows: (1) evidence of the knife and drug use were irrelevant to the charges, and (2) the evidence was inadmissible under Evidence Code section 1101, subdivision (a), as evidence of uncharged offenses. We disagree.

/////

As far as we can discern from the record, no specific objection was made on the latter basis that the evidence violated the rule limiting admission of prior bad acts under Evidence Code section 1101. "The failure to state the specific ground upon which an objection rests waives appellate review of the objection." (*People v. Dorsey* (1974) 43 Cal.App.3d 953, 959; Evid. Code, § 353, subd. (a).)

Defense counsel did, however, request that such evidence be excluded under Evidence Code section 352 as being "inherently damaging" to defendant. In making the argument, defense counsel stated: "To suggest that these other things inclusive, with my client's not even being charged for them, they are very prejudicial, they give the jury some indication that, oooh, he's a druggy, or oooh, he has a knife, he's more probably— probability is he's more likely to know he was carrying a gun." To the extent counsel's argument could possibly be characterized as raising an objection under Evidence Code section 1101, we find the section inapplicable.

The drug use evidence was received on the issue of Deputy Hampton's credibility—an obviously important issue. Nothing in Evidence Code section 1101 "affects the admissibility of evidence offered to support or attack the credibility of a witness." (Evid. Code, § 1101, subd. (c); *People v. Stern* (2003) 111 Cal.App.4th 283, 296 [Evidence Code section 1101 did not bar evidence of prior uncharged stabbing because evidence was relevant to believability of victim's testimony].) And, the knife evidence was received as circumstantial evidence that defendant knew the entire contents of the bag when reaching into the bag after repeatedly being instructed to stop. Defense's closing argument: "My side is, you know, I didn't know the gun was in the bag because I found it over there." Again, nothing in Evidence Code section 1101 "prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as ... knowledge ...)." (Evid. Code, § 1101, subd. (b).) The restrictions on character evidence in Evidence Code section 1101, then, simply do not apply.

For similar reasons, we reject defendant's contention that the knife and drug use evidence was irrelevant. Evidence is relevant if it has any tendency in reason to prove a disputed material fact. (Evid. Code, § 210.) That standard is easily met here.

As set forth above, the drug use evidence was relevant to establish the believability of Deputy Hampton's testimony that defendant's conduct was symptomatic of being under the influence of a narcotic. The fact that defendant tested positive for methamphetamine tended to prove that Deputy Hampton was justified in suspecting defendant of being under the influence of a controlled substance when he detained him. As the People point out, and we agree, that the court ultimately determined whether defendant was legally detained does not mean, as defendant argues, that the

23

1  jury was not entitled to know why Deputy Hampton reacted in the manner
2  he did to defendant's conduct.

3      And, contrary to defendant's contention, the function of the knife evidence
    was not to suggest that defendant was a "killer." Instead, as the trial court
4    noted, the knife evidence tended to prove that defendant had knowledge of
    the bag's contents, including the gun and ammunition, which he repeatedly
5    offered to show Deputy Hampton. Even the defense conceded during its
    closing that "knowledge" was the crux of the case.
6

7      The trial court properly exercised its discretion in admitting the evidence
    over defendant's relevance objection. (*People v. Guerra* (2006) 37 Cal.4th
8    1067, 1113 [abuse of discretion standard of review applies to any ruling by
    a trial court on the admissibility of evidence], disapproved on other
9    grounds in *People v. Rundle* (2008) 43 Cal.4th 76, 151].) But even if it
    erred, no miscarriage of justice occurred given the uncontested evidence
10   that defendant was a convicted felon in possession of a firearm and
    ammunition. It is not reasonably probable that a result more favorable to
11   defendant would have been reached if the drug use and knife evidence had
    been excluded. (*People v. Watson* (1956) 46 Cal.2d 818, 836; Evid.Code, §
12   353, subd. (b).)
13

14  *Smith*, 2014 WL 6693822, at *10-11.  As with his *Miranda* claims, there is no indication that

15  petitioner presented these claims to the California Supreme Court and they are unexhausted as a

16  result.  These claims are without merit, however, and the court will deny them on that basis. 28

17  U.S.C. § 2254(b)(2).

18              **1.  Applicable Legal Standard**

19      Evidence violates due process only if "there are no permissible inferences the jury may

20  draw from the evidence" and it is of "such quality as necessarily prevents a fair trial."  *Jammal v.*

21  *Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991) (quoting *Kealohapauole v. Shimoda*, 800 F.2d

22  1463, 1465 (9th Cir. 1986)).  A writ of habeas corpus will be granted for an erroneous admission

23  of evidence "only where the 'testimony is almost entirely unreliable and . . . the factfinder and the

24  adversary system will not be competent to uncover, recognize, and take due account of its

25  shortcomings.'"  *Mancuso v. Olivarez*, 292 F.3d 939, 956 (9th Cir. 2002) (quoting *Barefoot v.*

26  *Estelle*, 463 U.S. 880, 899 (1983)).  The Ninth Circuit has also observed that:

27  /////

28  /////

1    The Supreme Court has made very few rulings regarding the admission of
2    evidence as a violation of due process.  Although the Court has been clear that a
     writ should be issued when constitutional errors have rendered the trial
3    fundamentally unfair (citation omitted), it has not yet made a clear ruling that
     admission of irrelevant or overtly prejudicial evidence constitutes a due process
4    violation sufficient to warrant issuance of the writ.

*Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009).  Therefore, "under AEDPA, even

clearly erroneous admissions of evidence that render a trial fundamentally unfair may not permit

the grant of federal habeas corpus relief if not forbidden by 'clearly established Federal law,' as

laid out by the Supreme Court."  *Id*.

### 2.  Analysis

The court finds that the admission of the drug and knife evidence did not preclude a fair

trial.  The evidence was, as the Court of Appeal noted, relevant to the issues of the deputy's

credibility and petitioner's knowledge of the pouch contents.  As such, there were permissible

inferences which the jury could draw from it. Additionally, the United States Supreme Court has

not held that the admission of irrelevant or prejudicial evidence violates due process. *Estelle v.*

*McGuire*, 502 U.S. 62, 68-70 (1991) ("Concluding, as we do, that the prior injury evidence was

relevant to an issue in the case, we need not explore further the apparent assumption of the Court

of Appeal that it is a violation of the due process guaranteed by the Fourteenth Amendment for

evidence that is not relevant to be received in a criminal trial.").  Therefore, the court cannot say

that the Court of Appeal's decision was contrary to clearly established federal law.  Finally, as

noted in the foregoing analysis of the *Miranda* claims, the strength of the other, undisputedly

relevant evidence against petitioner rendered any error in admitting this evidence harmless.

**IV. Conclusion**

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of

habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge

assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties.  Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  *See* Rule 11, Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED:  November 2, 2017.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE